ALAN MOSKOWITZ AND HELENE MOSKOWITZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moskowitz v. Commissioner
Docket No. 31752-84
United States Tax Court
T.C. Memo 1988-529; 1988 Tax Ct. Memo LEXIS 558; 56 T.C.M. (CCH) 662; T.C.M. (RIA) 88529; November 15, 1988
Alan Moskowitz, pro se. Irene S. Carroll, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: In a statutory notice of deficiency, respondent determined a deficiency of $ 25,000 in petitioners' Federal income tax for calendar year 1978. After concessions, [1] the sole issue for decision is whether respondent, in auditing petitioners, violated the restrictions under section 7605(b) [2] concerning second inspections of records. *559 FINDINGS OF FACT The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Alan Moskowitz and Helene Moskowitz, husband and wife, resided in Los Angeles, California, at the time they filed their petition in this case. They filed their joint Federal income tax return for the year at issue with the Office of the Internal Revenue Service in Fresno, California. On their 1981 joint Federal income tax return, petitioners claimed an investment credit of $ 25,000. However, petitioners computed a negative amount for their taxable income for 1981 and, by carrying the credit back, applied for a tentative refund of their 1978 Federal income tax. Consequently, on or about June 14, 1982, respondent tentatively allowed the credit and refunded $ 25,000 to petitioners. However, by a letter dated April 11, 1983, petitioners learned that respondent had selected their 1981 return for audit. Subsequently, petitioners' accountant met with respondent's auditor (first auditor) on June 7, 1983, and again on June 20, 1983. In those meetings, the accountant, pursuant to the first auditor's request, provided records and other information to *560 respondent concerning petitioners' 1981 return, including records for petitioners' investment credit, interest income, and savings and checking accounts. [3]
Thereafter, the accountant was told by respondent's first auditor that she was satisfied with petitioners' 1981 return and with the records and information that they had provided. From that and similar statements, the accountant concluded that the audit was complete and, correspondingly, informed petitioners by letter dated June 20, 1983, of his conclusion that "the Internal Revenue Service has accepted as filed your 1981 income tax returns and a No Change notice is in process of being issued." Apparently, however, the audit was not complete. Less than 2 months later, another of respondent's agents (second auditor) informed petitioners by letter dated August 4, 1983, that he, too, would be examining their 1981 return. Concomitantly, the second auditor requested that petitioners produce for his inspection certain banking, partnership and rental property *561 records. [4] In response, however, the second auditor received a letter from the accountant dated August 17, 1983, stating that the 1981 return had, in the accountant's view, "been audited, concluded and closed . . . [and] a No change notice is in process of being issued." Correspondingly, petitioners refused to produce their records for the second auditor. The second auditor, in responding to the accountant by letter dated September 1, 1983, informed him that respondent had not closed the audit, but simply had transferred petitioners' case file to another office and had requested the records "due to the failure of . . . [petitioner] or the Representative to provide adequate books and records for the examination." Concurrently, the second auditor informed petitioners *562 by separate letter dated September 1, 1983, that "per the examination of your 1981 Form 1040 . . . [respondent will] disallow the Investment Tax Credit Carryback claimed on the 1978 Form 1045 - Application for Tentative Refund." (Emphasis supplied.) Despite the second auditor's letters, and notwithstanding that petitioners did not receive a so-called "No Change notice" petitioners refused to produce their records for the second auditor. Thereafter, respondent, by a letter to petitioners dated March 12, 1984, [5] proposed a $ 25,000 adjustment for 1978 relating to petitioners' investment credit "carryback" and subsequently, by notice of deficiency dated June 18, 1984, determined a $ 25,000 deficiency in petitioners' 1978 Federal income tax. [6]
OPINION Petitioners seek as a remedy in this case *563 to invalidate respondent's notice of deficiency. In this regard, petitioners cite section 7605(b), which provides, in pertinent part, that "only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." Sec. 7605(b); see generally ; . Specifically, petitioners argue, and respondent disputes, that after the auditor completed an inspection of their records in June 1983, respondent's second auditor impermissibly "investigated" them more than once and without written notice. On this record, however, we hold for respondent. At the outset, we note that "As a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations." . Thus, we need not *564 look into petitioners' allegations on the record concerning respondent's alleged bureaucratic inertia and improprieties during the audit, or concerning respondent's alleged failure to afford petitioners an appeals conference. Accordingly, we turn to whether respondent, in auditing petitioners, violated the restrictions under section 7605(b) concerning second inspections of records. While we do not question petitioners' rights to resist a second inspection, petitioners are attempting to fashion a remedy under section 7605(b) in a situation where a second inspection did not occur. Although respondent's first auditor inspected petitioners' records, respondent's second auditor did not examine petitioners' records. Instead, petitioners received the second auditor's request for records, viewed it as an impermissible request for a second inspection, and correspondingly refused to produce their records. As respondent contends, petitioners prevented the possibility of any second inspection in this case. See, e.g., Benjamin v. Commissioner, 66 U.C. 1084, 10988 (1976), affd. . Nevertheless, petitioners argue that section 7605(b) applies *565 in the present case because respondent failed to provide written notification of a second inspection. For that argument to have merit, however, we would have to find a prerequisite second inspection. See, e.g., Benjamin v. Commissioner, supra. As discussed above, petitioners prevented any second inspection and, in short, present no basis for a remedy under section 7605(b). [7]
Finally, we note respondent's alternative assertion on brief that he did not violate the provisions of section 7605(b) because he properly inspected petitioners continuously, and not successively. In particular, respondent argues that he did not close the audit and that his second auditor permissibly requested additional records to continue his review of petitioners' 1981 return and their corresponding tentative refund for 1978. Because we have found that *566 petitioners refused to turn over any records after the second auditor's request, we need not address respondent's assertion. Petitioners present no further arguments of merit. Accordingly, we hold that respondent, in auditing petitioners, did not violate the restrictions under section 7605(b) concerning second inspections of records. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. The entire $ 25,000 deficiency relates to an investment credit that petitioners claimed with respect to a computer leasing transaction. On brief, however, petitioners concede the impropriety of the credit and instead seek herein to challenge the propriety of respondent's statutory notice. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year relevant herein.↩
3. Because the record is unclear on this point, we can only assume that the auditor was the only employee of respondent to examine petitioners' records at this time.↩
4. In particular, the agent, stating in his letter that respondent had assigned the 1981 return to him for examination, requested therein that petitioners meet with him and have available their corporate, partnership, closing statement and rental property records, their bank statements and canceled checks, any prior revenue agent's report and, among other things, a copy of their 1978 Federal income tax return↩
5. The letter, known as a "30-day letter," preceded respondent's statutory notice of deficiency and, instead of announcing respondent's determinations, informed petitioners that they had 30 days in which to accept respondent's proposals or request an administrative appeal. ↩
6. Comparatively, respondent proposed no adjustment and determined no deficiency for calendar year 1981.↩
7. Indeed, as respondent states on brief, petitioners, unlike taxpayers who seek under sec. 7605(b) to enjoin the Commissioner's subpoenas for records production, instead effectively fashioned their own "remedy" herein by preventing the agent from examining their records. See, e.g., .↩